FILED
2011 Jun-28  AM 10:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRENDA M. GREENE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV-10-BE-1060-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social,** | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The claimant, Brenda M. Greene, applied for supplemental security income on December 4, 2006, the alleged onset date of disability. (R. 11).  The claimant alleges disability because of hypertension, major depression, mood disorder, personality disorder and obesity. (R. 13).  The Commissioner denied the claim both initially and on reconsideration.  The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on February 10, 2009. (R. 11).  In a decision dated June 4, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act and thus ineligible for supplemental security income. (R. 24).  On February 25, 2010, the Appeals Council denied the claimant's request for review; therefore, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1).  The claimant exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below, the decision of the Commissioner will be reversed and remanded.

1

## II.  Issue presented

The claimant presents the following issue for review: whether the ALJ gave proper

weight to claimant's treating source.[1]

## III.  Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham*

*v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.

1987).

"No presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*, but

will affirm those factual determinations that are supported by substantial evidence.  "Substantial

evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the

[Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look

only to those parts of the record that support the decision of the ALJ, but also must view the

record in its entirety and take account of evidence that detracts from the evidence relied on by the

---

[1]Although the claimant raises other issues, because of the court's disposition, those issues
need not be addressed.

2

ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person cannot "engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A).  To make this determination, the Commissioner employs a five-step, sequential

evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments
> set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative answer
> to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Generally, the ALJ gives a treating doctor's opinion more weight than that of a consulting

doctor.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. §

404.1527(d)(2)("Generally we give more weight to opinions from your treating sources, since

these sources are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of your medical impairment(s)...").  However, where the ALJ articulates

specific reasons supported by substantial evidence for not giving the opinion of a treating

physician controlling weight, no reversible error exists. *Hutchinson v. Astrue*, 408 Fed.Appx.

3

324, 327 (11th Cir. 2011).  The ALJ must explain in the decision the weight given to the opinions of not only the State Agency medical or psychological consultant, but must also do the same for any opinions from treating sources and nontreating sources. 20 C.F.R. § 404.1527(f)(2)(ii).

> When dealing with "other sources,"
>
> [t]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such an opinion may have an effect on the outcome of the case.

Social Security Ruling, SSR 06-03p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).  The ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## V.  Facts

The claimant achieved a high school education and was forty years old at the time of the administrative hearing. (R. 23).  Her past work experience includes employment as a custodial worker, factory worker, deli worker, fire watcher, and laborer in navy shipyard. (R. 23, 100).  Claimant stated that she dealt with depression and mood disorders since she turned seventeen. (R. 160).  The claimant testified that she cannot work because of hallucinations, panic attacks and hearing voices. (R. 34).  She also explained that she does not cope well with large groups of people. (R. 36, 114).

Claimant sought treatment from the Lowndes County Director, Ms. Carolyn Taylor, at Montgomery Area Mental Health Authority (MAMHA) starting December 2006, mainly

complaining of depression. (R. 142-145).  At that point, claimant stated that she does not have a

past mental health diagnosis, does not currently receive treatment, and does not currently take

medication. (R. 142, 144).  On the day of intake, Ms. Taylor, also a licensed graduate social

worker, evaluated claimant and found her affect depressed and her mood anxious and dysphoric.

However, Ms. Taylor noted claimant's calm motor activity, normal speech, and normal

orientation with no perceptual disturbances. (R. 145).

At the next appointment with claimant on January 10, 2007, Ms. Taylor suggested

individual therapy as part of claimant's treatment plan and recommended that claimant contact

her family physician for medication/evaluation.  (R. 146).  During that visit, claimant set a goal

to reduce her depressed mood and stressors. (R. 147).

On January 30, 2007, a MAMHA practitioner[2] diagnosed claimant under the Axis I

Clinical Disorders category with "Major Depression Disorder Single Moderate." (R. 149).

On February 2, 2007, family practitioner and consulting physician, Dr. George Thomas,

examined claimant and diagnosed her with hypertension, anxiety, and depression.  Dr. Thomas

also prescribed Zoloft for claimant's depression. (R. 151).

Consulting psychologist Dr. Vonceil C. Smith conducted a disability evaluation for

claimant on February 14, 2007, based on her review of information from the Disability Report,

Daily Activities Questionnaire and claimant's report. (R. 160-164).  The initial diagnostic

impression included Axis I - mood disorder, not otherwise specified; Axis II - personality

disorder, not otherwise specified, with dependent features; and Axis III - diagnosis deferred to

---

[2]The signature on this and several other MAMHA records is illegible; therefore, the court
refers to a "MAMHA practitioner."

medical. (R. 160). Based on the findings of her evaluation of the records, Dr. Smith found that claimant appeared mildly impaired in her ability to understand, remember and carry out instructions, and moderately impaired in her ability to respond appropriately to supervision, co-workers and work pressures in a work setting. With continued appropriate treatment, Dr. Smith found that claimant had a good prognosis for Axis I. (R. 163).

Consulting physician Dr. Robert Estock, a State Agency medical consultant, completed a Psychiatric Review Technique to determine claimant's residual functional capacity (RFC) on March 2, 2007. (R. 165-178). Based on his review of Dr. Smith's disability evaluation, the claimant's own written statements and the third party statements from claimant's friend of nineteen years and current roommate, Ms. Virginia Martin, Dr. Estock concluded the objective findings support an unskilled functional restriction. Dr. Estock noted that he expected claimant's symptomology to improve because the record reflected she recently started taking medication; therefore, he opined that her symptomology did not appear to meet or equal any listing. (R. 177).

Dr. Estock also conducted the Mental Residual Functional Capacity Assessment on March 2, 2007. (R. 179-182). Dr. Estock based his summary conclusions from the information in the file and recorded the elaborations on the preceding capacities in the functional capacity assessment section marked as category III. (R. 179, 181). He found that claimant can carry out short simple instructions and tasks, but encounters more difficulty with detailed tasks and instructions. He also determined that claimant needs a well-spaced work environment for concentration, contact with the public should be infrequent and non-intensive, and changes in the workplace should be infrequent and gradually introduced. (R. 181).

Treatment notes from certified registered nurse practitioners at MAMHA for the period of

June 5, 2007, through November 18, 2008, indicate that claimant consistently proved to be alert, mood euthymic and well oriented, with no overt psychosis; however, claimant twice complained of audio/visual hallucinations. (R. 183-207).  At her treatment in August 2007, the nurse noted that claimant sought to impress her by displaying anxiety. (R. 199).  The nurse noted on November 13, 2007, that although claimant complained of seeing and hearing things, the nurse found no evidence of that existed. (R. 202).  On November 18, 2008, the nurse noted that claimant tested as alert, well oriented, and mood euthymic, although claimant complains of depression.  Also, the nurse noted that claimant complained of audio/visual hallucinations, but showed no signs of symptoms during the examination. (R. 191).

On September 10, 2007, claimant visited MAMHA and met with nurse practitioner Marcia Jones, who recommended adult intensive day treatment, medication therapy, individual therapy and group therapy. (R. 183).  Claimant complained of deep depression, hallucinations, and feelings of hopelessness.  She received a Global Assessment of Functioning (GAF) score of 40, which corresponds to some impairment in reality testing or communication or major impairment in several areas. (R. 184).  During that visit, claimant also received a diagnosis from MAMHA's licensed clinician under the Axis I Clinical Disorders category with "Major Depression Severe Recurrent with Psychotic Features." (R. 185).  Claimant set a goal to decrease depression and psychotic symptoms. (R. 186).

Montgomery Primary Health Care treated the claimant for the period of February 2, 2007 through November 24, 2008.  The records show that claimant received check-ups for her high blood pressure. (R. 210-219).  The initial HSI (Health Services Inc.) Adult Medicine Progress Notes show that claimant complained of depression, panic attacks, bipolar disorder, and other

7

physical limitations. (R. 219).  In September 2007, the nurse noted claimant's blood pressure at

180/114, the highest recorded. (R. 216).

A letter from MAMHA, approved by Ms. Taylor and dated July 22, 2009, states

claimant's diagnosis as "296.34 Major Depression; Severe Recurrent/Psychotic Features." (R.

232).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income,

the claimant requested and received a hearing before an ALJ. (R. 11).  At the hearing on February

10, 2009, the claimant testified that she experiences hallucinations, panic attacks, and hears

voices. (R. 34).  She also mentioned that she is overweight, depressed, and has hypertension, and

that she lies down for a majority of the day. (R. 29, 31-32, 38).

The claimant stated that she visits the MAMHA office three times during the week to

receive outpatient treatment. (R. 34).  At MAMHA, claimant attends group therapy sessions,

watches movies relating to diagnoses, and receives medication at a discounted price for her

depression. (R. 30, 34, 35).

A vocational expert, Mr. Joshua Tilton, testified concerning the type and availability of

jobs that the claimant can perform based on the ALJ's hypothetical listing of the following

mental limitations: mild limitation in using judgment during simple one and two-step work

related decisions; moderate limitation  to respond to coworkers and work pressures; mild

limitation in remembering and understanding complex instructions; and mild limitation in

maintaining attention and concentration for periods of at least two hours. (R. 37-39).  Based on

that hypothetical, Mr. Tilton provided three examples of jobs available in the national economy:

8

a cashier, an automobile self-service station attendant, and an automatic car wash attendant. (R. 36-38). The ALJ then changed the hypothetical, which assumed the same information as before except for the following limitations: markedly limited in the ability to respond to customary work pressures and in the ability to maintain attention concentration and pace for periods of at least two hours. Mr. Tilton responded that someone with those limitations could neither perform the jobs he previously mentioned nor any other jobs because of the inability to handle job pressures and the limited concentration pace and persistence. Also, the ALJ created a hypothetical that accepted the claimant's testimony that she must lie down for a majority of the day. (R. 38). Mr. Tilton stated that this limitation would preclude all jobs in the economy because the typical employer would not tolerate it. (R. 38-39).

Additionally, although the claimant has prior work experience, the vocational expert testified that the claimant has no past relevant work. (R. 23, 36).

*The ALJ's Decision*

On June 4, 2009, the ALJ issued a decision finding the claimant not disabled under the Social Security Act. (R. 24). First, the ALJ found that the claimant had not engaged in substantial gainful activity since December 4, 2006, the application date. (R. 13). Next, the ALJ found that the claimant has severe impairments including hypertension, major depression, mood disorder, personality disorder, obesity, and hypercholesterolemia; however, he concluded that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 13, 18).

The ALJ considered all symptoms and opinion evidence using the pain standard to determine claimant's residual functional capacity (RFC) to perform a range of light work with

various physical limitations.  He determined the claimant's mental RFC:

> The claimant has moderate limitations in her ability to respond appropriately  to customers or other members of the general public; respond appropriately to supervision and/or co-workers; to respond to customary work pressures; and to maintain attention, concentration, or pace for periods of at least two hours.  She has mild limitations in her ability to use judgment in simple one or two step work related decisions; use judgement in detailed or complex work related decisions; understand, remember and carry out simple one and two step as well as detailed or complex instructions.

(R. 19).

The ALJ analyzed claimant's testimony of her daily activities. (R. 20).  The ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible..." because of the inconsistency with the residual functional capacity assessment. (R. 21).  The ALJ found the claimant's testimony of functional restrictions disproportionate to the objective medical evidence because the record contained no objective findings that could reasonably be expected to produce the degree and intensity of limitations alleged. (R. 22).

The ALJ considered the questionnaire that Ms. Martin filled out regarding claimant's daily activities. (R. 20, 116-119).  Ms. Martin explained that claimant has difficulty sleeping, remembering and following instructions. (R. 116-118).  She also stated that claimant needs help with cooking, shopping and transportation. (R. 117).  However, the ALJ gave little weight to Ms. Martin's statements because they contradicted the claimant's own testimony at the hearing. (R. 22).

The ALJ considered the opinions of the State Agency medical consultants and

substantially agreed with their findings that the claimant was not disabled. (*See* R. 165-182).  He found that although they did not examine the claimant, Dr. Smith and Dr. Estock provided specific reasons for their opinions indicating that these opinions were grounded in the evidence of record.  Although the ALJ acknowledged that the Eleventh Circuit case law and regulations require him to give greater weight to the treating and examining physicians' reports, the ALJ did not provide specific reasons for discrediting the MAMHA medical opinions that diagnosed claimant with severe depression. (R. 23).

Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 23-24).

## VI.  DISCUSSION

The claimant argues that the ALJ failed to give the proper weight to her treating physician.  She argues that the ALJ did not correctly weigh her medical sources' diagnosis of severe depression.  This court finds that the ALJ did not explain the weight given to claimant's treating source.

Medical opinions include "statements from physicians or other medical sources that reflect judgments about the nature and severity of impairment(s), including symptoms, diagnosis, what the applicant can still do despite her impairment(s), and any physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  A treating source can be "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing relationship with you." 20 C.F.R. § 416.902.  "Other acceptable medical source[s]" include licensed or certified

11

psychologists. 20 C.F.R. § 404.1513(a)(2).  In addition to the evidence provided by "acceptable medical sources," the adjudicator may use evidence from "other sources," which includes licensed clinical social workers, therapists and nurse practitioners; however, only "acceptable medical sources" can be considered treating sources. Social Security Ruling, SSR 06-03p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

Regarding the weight given to a treating source, "we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)..." 20 C.F.R. § 404.1527(d)(2); *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984)("Generally a treating doctor's opinion is entitled to more weight than a consulting doctor's.").  Where the ALJ articulates specific reasons supported by substantial evidence for not giving the opinion of a treating physician controlling weight, no reversible error exists. *Hutchinson v. Astrue*, 408 Fed.Appx. 324, 327 (11th Cir. 2011).

When dealing with "other sources,"

[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such an opinion may have an effect on the outcome of the case.

Social Security Ruling, SSR 06-03p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).  The ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

A non-examining source includes "a physician, psychologist, or other acceptable medical

source who has not examined you but provides a medical or other opinion in your case... it includes State agency medical and psychological consultants, other program physicians and psychologists, and medical experts we consult." 20 C.F.R. § 416.902.  However, reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision.  *Spencer ex. rel. Spencer v. Heckler*, 765 F. 2d 1090, 1094 (11th Cir. 1985).

In the instant case, the claimant routinely visited MAMHA for outpatient therapy to treat depression during the period of December 2006 through October 2008.  On September 10, 2007, claimant received a diagnosis of "major depression, severe recurrent with psychotic features," from a licensed clinician and again on July 22, 2009, from a licensed graduate social worker. Although the ALJ admitted great weight should be given to claimant's treating sources, he concluded his analysis and failed to address his reasons for accepting or discrediting the diagnoses made by claimant's "acceptable medical source" and "other source" opinion evidence. This failure constitutes a reversible error because the ALJ did not articulate the weight he gave to each medical opinion.

The ALJ gave proper reasoning for discrediting claimant's testimony and the third party testimony, but he did not explain the weight he gave to the severe depression diagnoses from the MAMHA treating source, nor did he discredit those medical opinions.  Although the ALJ correctly followed the requirements of SSR 96-6p and provided reasoning for agreeing with the State Agency doctors' opinions, he did not mention specifically why he disregarded the objective medical records from the licensed workers at MAMHA.  The ALJ merely stated, "... pursuant to

13

Eleventh Circuit case law and regulations, I give greater weight to the treating and examining physician's [sic] reports as summarized herein." (R. 23). A reviewing tribunal would then look for thorough reasoning for rejecting or accepting claimant's possible treating sources to fully understand the ALJ's decision regarding each medical opinion; however, the ALJ concluded the analysis with no such reasoning.

The ALJ must explain in the decision the weight given to the opinions of not only the State Agency medical or psychological consultants, but must also do the same for any opinions from treating sources and nontreating sources. 20 C.F.R. § 404.1527(f)(2)(ii). The court expects an analysis of the consideration given to the medical opinions from any treating source because reports from the State Agency reviewing doctors do not constitute substantial evidence when taken alone. *Spencer ex. rel. Spencer v. Heckler*, 765 F. 2d at 1094. In this case, the ALJ did not explain the weight given to the medical opinions of claimant's "acceptable source," the licensed clinician, and did not discuss the opinion of claimant's "other source," the licensed graduate social worker. Because the ALJ conducted no such analysis for medical opinions other than the State Agency doctors, the court cannot determine whether substantial evidence exists to support his conclusion.

Because the medical opinions of the licensed physician and social worker differ from that of the consulting physicians that performed claimant's Mental RFC and Psychiatric Review Technique, the ALJ should properly explain the weight given to the diagnoses from the medical opinions at MAMHA. Because of the ALJ's failure to do so, the court finds that substantial evidence does not support the ALJ's opinion.

14

## VII.  CONCLUSION

For the above reasons, the court finds that the ALJ failed to show good cause for rejecting the opinions of the claimant's treating physician.  Accordingly, substantial evidence does not support his decision.  Therefore, the court will reverse the Commissioner's decision and will remand it for the ALJ to determine whether the claimant is entitled to Supplemental Security Income Payments.

A separate Order will be entered.

DONE and ORDERED this 28th day of June 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE